# In The United States Court of Federal Claims

Nos. 98-168C, 02-1632C & 03-2699C

(Filed: January 9, 2009)

_____

| | | |
|---|---|---|
| NORTH STAR ALASKA HOUSING | * | |
| CORPORATION, | * | Motion for attorney's fees and litigation |
| Plaintiff, | * | expenses; "Bad faith" exception to the |
| | * | American Rule; 28 U.S.C. § 2412(b); |
| v. | * | *Centex* construed; Agency's prelitigation |
| | * | "bad faith" conduct in injecting bias into the |
| THE UNITED STATES, | * | contract claim process does not warrant the |
| | * | imposition of fees; Motion denied. |
| Defendant. | * | |

_____

**ORDER**

_____

*Paul Wesley Killian,* Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for plaintiff.

*Timothy Paul McIlmail*, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Gregory G. Katsas*, for defendant.

**ALLEGRA, Judge**:

On March 7, 2007, this court held that the United States had breached its covenant of good faith and fair dealing in administering an Army housing contract with North Star Alaska Housing Corporation (North Star). *North Star Alaska Hous. Corp. v. United States*, 76 Fed. Cl. 158, 189-212 (2007). Relying on a wealth of evidence, this court found that defendant's representatives acted with animus in a fashion calculated to hinder plaintiff's performance. *Id*. Among the actions cited by the court was defendant's abuse of the claim resolution process required by the Contract Disputes Act. *Id*. at 208-12. Judgment in favor of plaintiff was entered on April 15, 2008. Defendant did not prosecute an appeal.

On June 18, 2008, plaintiff filed a motion for attorney's fees and litigation expenses, invoking 28 U.S.C. § 2412(b). Defendant filed its response in opposition to the motion on August 4, 2008. Plaintiff filed its reply on August 21, 2008. Argument on the motion is deemed unnecessary.

I.

Absent a statute or enforceable contract provision, fee shifting is generally prohibited, with each party instead ordinarily bearing its own attorney's fees. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975). This so-called "American Rule" is founded on the belief that requiring an unsuccessful litigant to pay the litigation expenses of the prevailing party would unduly deter parties from seeking to "vindicate their rights" in a judicial forum. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967); *see also Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306 (1796) (in which this rule originated). Over the years, however, courts have recognized limited exceptions to this rule, among them that a court may use its inherent power to assess attorney's fees "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers*, 501 U.S. at 45-46 (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)); *see also Alyeska,* 421 U.S. at 258-59. Section 2412(b) of Title 28, a provision of the Equal Access to Justice Act (EAJA), extends this concept to the United States, subjecting it to the award of attorney's fees in civil cases "to the same extent that any other party would be liable under the common law . . . for such an award." *See also* H.R. Rep. No. 96-1418, at 9 (1980) (section 2412(b) "reflects a strong movement by Congress toward placing the federal government and civil litigants on completely equal footing"); *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 190 (2d Cir. 2000).

The "bad faith" exception to the American Rule serves the "dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers*, 501 U.S. at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)); *see Chambers*, 501 U.S. at 74 (Kennedy, J., dissenting) (bad faith exception to American Rule "permits fee shifting as a sanction to the extent necessary to protect the judicial process"). Such an award is punitive in nature and should be imposed only in exceptional cases and for dominating reasons of justice. *See Hall v. Cole*, 412 U.S. 1, 5 (1973); *Eureka Inv. Corp. v. Chicago Title Ins. Co.*, 743 F.2d 932, 946 (D.C. Cir. 1984). Under this exception, it is appropriate to assess attorney's fees when the court finds that "fraud has been practiced upon it, or that the very temple of justice has been defiled[.]" *Univ. Oil Prods. Co. v. Root Ref. Co.*, 328 U.S. 575, 580 (1946). Such a sanction is also appropriate when a party, in bad faith, delays or disrupts litigation or hampers the enforcement of a court order. *Chambers*, 501 U.S. at 46. The "bad faith" exception thus applies "to a full range of litigation abuses," *id*., and "depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation." *Id*. at 53; *see also Hutto*, 437 U.S. at 689 n.14.

In keeping with these sentiments, the Federal Circuit recently concluded that "fee awards cannot be assessed based on claims of bad faith primary conduct," *i.e.*, "conduct that forms the basis for the substantive claim for relief." *Centex Corp. v. United States*, 486 F.3d 1369, 1371 (Fed. Cir. 2007); *see also Consumers Energy Co. v. United States*, 2008 WL 5135913 at *5-6 (Fed. Cl. Nov. 26, 2008). The Federal Circuit noted that its view was shared by at least eight

other circuit courts.[1]  *Centex* reasoned that "authorizing a court to shift fees based solely on bad faith conduct that forms the basis for the substantive claim for relief would undermine the American Rule by penalizing a party who raises good faith defenses to claims of liability for bad faith conduct."  486 F.3d at 1372; *see also id.* (expressing a desire to "protect a defendant's right to go to court and argue a non-frivolous defense to a claim, even if the claim arose from the defendant's bad faith conduct").  The court also categorically rejected arguments that the EAJA was intended to "alter the common law fee-shifting rule," emphasizing instead that, as under the common law, "[f]ee-shifting is not permitted for bad faith conduct that precedes the accrual of the claim in question." *Id*. at 1375.  *Centex* thus suggests that the bad faith exception ordinarily applies only if some bad faith conduct occurs in the context of litigation.

II.

Seemingly undaunted by the limitations inherent in this holding, plaintiff asseverates that attorney's fees are warranted here because defendant proceeded in bad faith in several critical regards.  First, it asserts that fees are recoverable here because defendant's prior counsel, Mr. Donald Kinner, exhibited bad faith in the conduct of this litigation by:  (i) advising the Army to extend its practice of reducing the reimbursements paid for replacing carpet damaged by occupants to reflect the age of the carpeting – a practice the parties referred to as "depreciation;" and (ii) triggering, or at least promoting, a criminal investigation of plaintiff's conduct that

---

[1] The Federal Circuit cited a variety of cases for this proposition, including the following: *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.,* 313 F.3d 385, 391 (7th Cir. 2002), *cert. denied*, 540 U.S. 1068 (2003) (holding that ''behavior in the litigation itself is the only lawful domain of the relevant concept of 'inherent authority''''); *Towerridge, Inc. v. T.A.O., Inc.,* 111 F.3d 758, 765 (10th Cir. 1997) (''[A]n award of attorneys' fees may not be premised solely on prelitigation conduct.''); *Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.,* 103 F.3d 1422, 1435 (8th Cir. 1997) (''[A court] may not base an [attorney's fees] award solely on the conduct that led to the substantive claim.''); *Ass'n of Flight Attendants v. Horizon Air Indus., Inc.,* 976 F.2d 541, 550 (9th Cir. 1992) (''[N]o federal appellate authority in or out of the Ninth Circuit has clearly approved an order shifting attorney's fees based solely upon a finding of bad faith as an element of the cause of action presented in the underlying suit. We decline to do so.''); *Sanchez v. Rowe,* 870 F.2d 291, 295 (5th Cir. 1989) (''We hold that the requisite bad faith . . . may not be based on a party's conduct forming the basis for [the] substantive claim.'') (emphasis omitted); *Woods v. Barnett Bank of Fort Lauderdale,* 765 F.2d 1004, 1014 (11th Cir. 1985) (''Vexatious conduct inherent in the fraudulent acts that make up the 10b–5 cause of action cannot be the basis for an attorney's fee award''); *Shimman v. Int'l Union of Operating Eng'rs,* 744 F.2d 1226, 1233 (6th Cir. 1984), *cert. denied*, 469 U.S. 1215 (1985) (''We therefore hold that the bad faith exception to the American Rule does not allow an award of attorney fees based only on bad faith in the conduct giving rise to the underlying claim.''); *Cordeco Dev. Corp. v. Santiago Vasquez,* 539 F.2d 256, 262–63 (1st Cir. 1976), *cert. denied*, 429 U.S. 978 (1976) (disapproving the position that the bad faith exception extends to bad faith in the events giving rise to litigation).

caused the court to stay this action for nearly a year (and which ultimately resulted in no indictments).  Second, plaintiff contends that fees should be imposed because the Army corrupted the contract claim resolution process, inappropriately coercing the contracting officers into denying various contract claims filed by plaintiff.  For its part, however, defendant contends that all the conduct identified by the plaintiff was "primary conduct" that formed the "basis for the substantive claim for relief" here.  It argues that, under *Centex*, such conduct provides no basis for assessing attorney's fees under the "bad faith" exception to the American Rule.  And it asserts that much of the conduct identified by plaintiff as the basis for its fee claim simply was not characterized by the court as being in bad faith.

A.

The latter point bears emphasis at the outset.  In fact, the court did not find – and plaintiff did not prove – that Mr. Kinner engaged in any bad faith conduct regarding the Army's decision to extend its depreciation practice to other occupant-damaged items replaced by plaintiff.  As this court previously described, the Army's initial decision to reduce the reimbursement associated with replacing carpeting initially was supported by at least one decision of this court that had allowed such depreciation.  *North Star*, 76 Fed. Cl. at 201 (citing *West Carthage Assocs. v. United States*, No. 00-622C (Fed. Cl. May 30, 2002)).  Based, *inter alia*, upon the existence of this precedent, the court found that the Army's initial decision to adopt the depreciation practice was not motivated by *animus*.  *North Star*, 76 Fed. Cl. at 202.  The court, however, went on to find that –

> Over time, however, this practice took on new dimensions.  Particularly as viewed through the prism of the many statements of animus in the record, it is clear the use of depreciation clearly became yet another weapon by which Mr. Peterson, Ms. Kiser and others could effectuate their animus toward North Star.  And this certainly was true by the time that these officials, responding to a July 3, 2002, ruling by this court shedding considerable doubt on the legality of the depreciation practice, extended depreciation to counter tops, vinyl and other types of materials installed in the units.

*North Star*, 76 Fed. Cl. at 202.  This findings thus hinged on statements reflecting *animus* made by Mr. Peterson, Ms. Kiser and other Army officials.  *Id*.  But, the record contained no such statements made by Mr. Kinner.  Indeed, it is conceivable, if not likely, that he urged the extension of the depreciation practice merely in an effort to make the Army's practices with respect to carpet and other items legally consistent.  That seemingly is the sort of tactical decision – in itself reasonable – that *Centex* intended to protect.  At all events, absent any specific finding that Mr. Kinner acted in bad faith regarding the depreciation issue, there is no basis upon which to impose attorney's fees here predicated upon his participation in the extension decision.

Nor did the court determine that Mr. Kinner acted in bad faith in seeking a criminal investigation of plaintiff's conduct.  While the circumstances surrounding the genesis of that

investigation are admittedly bothersome, it remains that the court did not find – and plaintiff most certainly has not shown – that the investigation itself, any actions taken by defendant's prior counsel (or other Justice Department officials) in pursuit thereof, or any resulting delay, were the result of bad faith. *North Star*, 76 Fed. Cl. at 211; *see also United States v. Ford*, 737 F.2d 1506, 1510 (9th Cir. 1984) (fee movant bears the burden of establishing an opponent's bad faith); James 10 James Wm. Moore, Moore's Federal Practice ¶ 54.171[2][c] (3d ed. 2008) (citing additional cases). As such, plaintiff second allegation also lacks the factual predicates necessary to bring it within the bad faith exception to the American Rule.

B.

A closer call is presented by plaintiff's final banner claim – that it is entitled to attorney's fees because defendant corrupted the administrative claim process. This court found that bad faith permeated the Army's conduct in this regard. *North Star*, 76 Fed. Cl. at 208-12. Moreover, the Federal Circuit, in *Centex*, left open the question whether "the judicial process is abused by defendant's bad faith response to a claim for relief after the claim accrues but before the judicial process is formally invoked." 486 F.3d at 1372 n.1. This response, of course, begs further inquiries regarding the proper contours of the sanctioning authority represented by the "bad faith" exception.

The judicial thinking on that subject can be arrayed over a spectrum. On one end of that spectrum are those circuits that liberally construe the sanctioning authority to reach virtually any form of "bad faith" conduct, freely including that which predates the litigation. Plaintiff cites two cases that lie on this end of the spectrum – *Maritime Management, Inc. v. United States*, 242 F.3d 1326 (11th Cir. 2001) and *Brown v. Sullivan*, 916 F.2d 492 (9th Cir. 1990). In *Maritime Management*, the Eleventh Circuit affirmed a district court finding that the United States had acted in bad faith by delivering an incomplete administrative record to the General Accounting Office in a bid protest. *Maritime Mgmt.*, 242 F.3d at 1333-34. And in *Brown*, the Ninth Circuit upheld sanctions based upon a Department of Health and Human Services program that systematically reviewed the decisions of administrative law judges in terms of the ratio of benefits allowed to benefits denied – a program that the district court had found was adopted in "bad faith." *Brown*, 916 F.2d at 496-97. Both cases employed the broad view of the bad faith exception – the one that permits fee shifting even where the bad faith was solely an aspect of the conduct giving rise to the lawsuit. *See Maritime Mgmt.*, 242 F.3d at 1333; *Brown*, 916 F.2d at 496. Not surprisingly, decisions at this end of the spectrum have no problem in concluding that the "bad faith" denial of a claim is sanctionable. Take, for example, *American Hosp. Ass'n v. Sullivan*, 938 F.2d 216 (D.C. Cir. 1991), in which the D.C. Circuit held that the bad faith exception may be invoked where "a party, confronted with a clear statutory or judicially-imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights." *Id.* at 220 (citation omitted); *see also S.E.C. v. Zahareas*, 374 F.3d 624, 627 (8th Cir. 2004); *Cobell v. Norton*, 319 F. Supp. 2d 36, 43-44 (D.D.C. 2004).

At the other end of the spectrum are decisions that, in more narrowly construing the sanctioning authority, conclude that fee shifting can never be based upon "bad faith" conduct that solely predates the litigation. *See Zapata*, 313 F.3d at 391 (this power is "is to be exercised sparingly, to punish misconduct . . . occurring in the litigation itself, not in the events giving rise to the litigation"); *Ass'n of Flight Attendants*, 976 F.2d at 549. These cases are particularly sensitive to the limitations associated with a court's use of inherent power, drawing support, in this regard, from the various opinions in *Chambers*. They often cite, *see, e.g., Towerridge*, 111 F.3d at 766, the majority's statement in *Chambers* that ("[t]he imposition of sanctions under the bad-faith exception depends . . . on how the parties conduct themselves during the litigation." 501 U.S. at 46. They also rely, *see, e.g., Ass'n of Flight Attendants*, 976 F.2d at 549, on Justice Kennedy's dissent, in which he more pointedly stated –

> When a federal court, through invocation of its inherent powers, sanctions a party for bad-faith prelitigation conduct, it goes well beyond the exception to the American Rule and violates the Rule's careful balance between open access to the federal court system and penalties for the willful abuse of it.

*Chambers*, 501 U.S. at 74 (Kennedy, J. dissenting); *see also id.* at 60 (Scalia, J., dissenting).[2] Tending toward this end of the spectrum are also decisions that, owing to a general hesitancy to sanction prelitigation conduct, refuse to assess fees based upon the underlying conduct that gave rise to the substantive claims in the case, but admit that there might be extreme circumstances in which conduct predating the litigation so impacts the integrity of the subsequent judicial proceedings as to give rise to fee-shifting. *Compare F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566 (5th Cir. 2008) *with Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir. 1989); *see also* 10 Moore's Federal Practice at ¶ 54.171[2][c][ii] (advocating this more limited view). The varying results in the latter cases often hinge not so much upon differing views of the law, as upon factual nuances and deference to district court findings regarding the impact of prior "bad faith" conduct on a given court proceeding.

Several reasons convince the court that the more restrictive view of the "bad faith" exception ought to apply here. First, this view is more in accord with the rationale expressed in *Centex*. After all, the Federal Circuit refused to follow *American Hospital* and clearly aligned

---

[2] The majority opinion in *Chambers* declined to reach the question whether the "bad faith" exception applied to prelitigation conduct, as it viewed the district court's sanction there as applying only to post-litigation conduct. 501 U.S. at 54-55 & n.16. The dissenters disagreed with this point, prompting them to define more directly the scope of the sanctioning authority. *Id*. at 74 (Kennedy, J., dissenting). It should be noted that the statements in *Chambers* are not inconsistent with *Vaughan v. Atkinson*, 369 U.S. 527 (1962). To be sure, the Supreme Court allowed an attorney's fee award there because the defendants had callously refused to pay maintenance and cure. *Id*. at 530-31. But, as the Federal Circuit noted in *Centex*, 486 F.3d at 1373, that award was based upon long-standing admiralty principles, which envisioned the recovery of attorney's fees in the case as an aspect of damages.

itself with those circuits that have held that an award of attorney's fees may not be premised on prelitigation conduct unless that conduct somehow directly impacts the judicial process. *Centex*, 486 F.3d at 1371-73. Second, this narrower view recognizes not only that the imposition of "bad faith" sanctions ought to be rare, but that that is the case because it involves the exercise of the court's inherent authority. That authority is highly limited and exists only to the extent necessary to ensure the proper functioning of the court, that is, to address actions that affect the exercise of judicial authority, relate to the behavior of the parties and attorneys in the litigation before the court, or otherwise "degrade the judicial system." *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 523 F.3d 1374, 1381 (Fed. Cir. 2008), *cert. denied*, 129 S.Ct. 279 (2008).[3] Giving effect to these limitations seemingly requires the court to forego punishing prelitigation conduct that does not significantly impact the integrity of the proceedings before it. Finally, it should not be overlooked that an approach that predicates fee liability based solely on how an agency handles an administrative claim threatens to expose the government to greater fee liability than its private counterparts. The latter, of course, generally do not employ formal claim processes. And even where such processes exist, usually through contracts, courts have been hesitant to impose fees based solely on the bad faith administration of those provisions. *See Lamb*, 103 F.3d at 1436-37 (relying on *Chambers* in holding that the bad faith administration of a contract "does not provide a basis upon which the court may use its inherent power to award attorney fees"). As such, readily imposing liability on the government in such circumstances likely violates that part of section 2412(b) which instructs that "the United States shall be liable for [attorney's fees] to the same extent that any other party would be liable under the common law."

Under this narrower view of the "bad faith" exception, the Army's "bad faith" conduct as to the claims process here does not support the imposition of attorney's fees. For one thing, even though that process plainly was conducted in bad faith, many, if not all, of plaintiff's claims would have been denied – and, in some instances, should have been denied – even in a perfectly fair process. This court said as much in its prior opinion, in which it rejected much of the relief originally requested by plaintiff in its CDA claims, including plaintiff's claim that it was entitled to damages for the loss of its business value, by far the most dollar-intensive of its claims. *See North Star*, 76 Fed. Cl. at 213-17. And there is no assertion (or proof) that defendant acted in "bad faith" in defending against the claims that this court sustained – again suggesting that virtually all the claims here would have been denied even in a "good faith" process. As such, unlike cases like *American Hospital*, it is hardly true here that, but for the bad faith, plaintiff could have avoided this action and the significant expenditure of judicial resources it entailed. In other words, this is not a case in which the identified conduct directly impacted the integrity of the judicial process. Moreover, while the court does not believe, as defendant intimates, that *Centex* requires that anything pled as part of a complaint becomes, by virtue of that fact, part and parcel of a substantive primary claim, here, the fact remains that the Army's perversion of the

---

[3] *See also Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994) ("Without a finding of fraud or bad faith whereby the 'very temple of justice has been defiled,' the court enjoys no discretion to employ inherent powers to impose sanctions."); *Zapata*, 313 F.3d at 391.

claims process was an integral part of plaintiff's argument that defendant had breached its covenant of good faith and fair dealing and, concomitantly, of the court's findings in that regard. As such, the "bad faith" conduct in this regard appears to fall squarely within the category which *Centex* holds cannot form the basis for a "bad faith" fees claim.

Plaintiff makes a variety of other lesser allegations in support of its fee request – for example, that bad faith warranting fee shifting was exhibited when, at trial, certain witnesses testified in contradiction to hard evidence, or when the government allegedly used the criminal investigation to supplement inappropriately its discovery. But, these allegation are just that – allegations – unsupported by any evidence evincing bad faith. Other claims made by plaintiff – for example, that certain Army officials falsified project records – again represent primary conduct supporting substantive bad faith contentions in the lawsuit at issue or in one of the subsequent lawsuits that plaintiff filed with respect to this same contract. As such, like plaintiff's principal allegations, none of these other assertions supports an award of attorney's fees.

III.

Based on the foregoing, the court **DENIES** plaintiff's motion for attorney's fees and litigation expenses.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge